UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| GALLINA FAMILY BANK IRREVOCABLE TRUST, et al., <br><br> Plaintiff(s), <br><br> v. <br><br> THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, et al., <br><br> Defendant(s). | Case No. 2:21-CV-90 JCM (DJA) <br><br> ORDER |

Presently before the court is defendant Lincoln National Life Insurance Company's ("Lincoln") motion for judgment on the pleadings (ECF No. 15).  Co-defendant The Leaders Group, Inc. ("Leaders") joined Lincoln's motion (ECF No. 23).  Plaintiffs Gallina Family Bank Irrevocable Trust (the "Trust"), John Gallina, and Richard Gallina (collectively "plaintiffs") responded in opposition to Lincoln's motion (ECF No. 27), to which Lincoln replied (ECF No. 33).

I.     **BACKGROUND**

This case involves a dispute over the terms of a life insurance contract.  The Trust purchased a life insurance policy (the "Policy") from Lincoln in 2001 to insure the life of plaintiff John Gallina who was 64 years old at the time.  (ECF No. 27 at 41 ¶ 6).  The Policy was purchased in consultation with, and upon the alleged advice of, insurance agent Norman Kastner, a co-defendant in this case.  (*Id.* ¶ 11).  Leaders was an alleged broker of the Policy.  (*Id.* ¶ 9).

**James C. Mahan**
**U.S. District Judge**

The Policy included "no lapse" coverage and a "no lapse" premium. (*See Gallina Family Bank Revocable Trust et al. v. Lincoln Financial Group*, No. 2:20-cv-00058-APG-EJY at ECF No.5 (hereinafter "Counterclaim"), Ex. C at 14).[1] The "no lapse" coverage provision explains that, so long as the "no lapse" premium is paid, the "no lapse" coverage will last for 10 years. (*Id.*). That "no lapse" coverage ensures that the Policy "will not lapse during those years" even if the Policy's costs exceed the value.

The gravamen of the dispute is whether the Policy was a variable policy subject to potential lapse, or a "term policy" guaranteed to last until John Gallina was 100-years old.[2]

---

[1] The parties curiously did not attach the relevant Policy to the pleadings before the court in this case. They instead cite to a Counterclaim from a previous iteration of the case, which included the Policy as an exhibit (that case was remanded in March 2020 for other reasons. *See infra* n.3). Since the Policy (as contained in the Counterclaim) forms the basis of plaintiffs' claims, the court takes judicial notice of it under Federal Rule of Evidence 201.

[2] The District of Arizona outlined the difference between variable life insurance and term life insurance in *Shoemaker v. Lincoln Nat. Life Ins. Co.*, No. cv 11-1368-PHX-JAT, 2013 WL 646010, at *1-3 (D. Ariz. Feb. 21, 2013). The court explained,

> Flexible Premium Life Insurance policies function differently than…Term policies in significant ways. First, the policy holder does not pay a set amount of premiums determined by the insurer, instead the insured may choose the frequency of the premiums and the amount. Second, the Policies generate cash value based upon, among other things, the premiums the insured pays, and the interest earned by the policy. The accumulated value of the policy is called the Net Cash Value and **the policy will remain in force for as long as the Net Cash Value is sufficient to cover the next month's insurance charges**—namely, the monthly expense deductions, monthly cost of insurance, and modal premium for any and all riders the insured has on the policy ("Insurance Charges"). **Therefore the amount of premiums chosen by the insured must be sufficient to add enough to the Net Cash Value to cover the Insurance Charges and keep the policy in force**…**If the Insurance Charges are increasing as the insured gets older and the interest earned by the policyholder is performing poorly, the planned premiums originally selected by the policyholder may become insufficient to cover the Insurance Charges and the Net Cash Value will be used to pay for the Insurance Charges, as a result the Net Cash Value will decline.** With Flexible Premium Life Insurance policies…the policyholder designates a "planned premium" amount which is part of the amount the policyholder plans to pay towards keeping the policy in force…Because the Policies provide for flexible premiums…a policyholder does not need to pay the "planned premium" at every premium interval and the Policies will remain in force for as long as the Net Cash Value of each Policy is sufficient to cover the Insurance Charges on the on the monthly calculation date.

*Shoemaker*, 2013 WL 646010, at * 2-3 (emphasis added).

Plaintiffs filed their first complaint in state court on December 4, 2018, in a suit for damages and declaratory relief. (ECF No. 1, Ex. A at 50). Plaintiffs filed a second amended complaint (the operative complaint) to include Norman Kastner and Leaders, *inter alia*, on or about November 4, 2020. (ECF No. 27 at 39, Ex. 5, Second Amended Complaint ("SAC")). Upon consent of all defendants, Kastner timely removed the case to federal court.[3] (ECF No. 1). Shortly thereafter, Lincoln filed the instant motion for judgment on the pleadings on February 11, 2021. (ECF No. 15).[4]

## II.     LEGAL STANDARD

Judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is proper if "taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quotation omitted). A Rule 12(c) motion is "functionally identical to a Rule 12(b)(6) motion." *Id*. That is, the court "accept[s] all factual allegations in the complaint as true and construe[s] them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

The court typically may not consider matters outside the pleadings on a Rule 12(c) motion lest the motion be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d). But the court can consider matters properly subject to judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

The court can also consider documents whose contents are merely alleged in a complaint and whose authenticity no party questions under the incorporation by reference

---

[3] This is the second time this case has been in federal court. Lincoln first removed this case in January 2020, but the case was subsequently remanded in March 2020. (*See Gallina Family Bank Revocable Trust et al. v. Lincoln Financial Group*, No. 2:20-cv-00058-APG-EJY). Mr. Kastner was not named as a defendant in the lawsuit at that time. Mr. Kastner was named in the second amended complaint and was served in December 2020, after which he petitioned for removal as a "later-served defendant" pursuant to 28 U.S.C. 1446(b)(2)(C). This second removal was successful, bringing all defendants into federal court—including the previously failed removing defendant, Lincoln.

[4] By way of procedural note, this court denied plaintiffs' motion to remand on April 19, 2021. (ECF No. 36).

James C. Mahan
U.S. District Judge

- 3 -

doctrine. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015); *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (holding that courts can consider a document incorporated by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim").

Federal courts sitting in diversity apply substantive state law, *Gasperini v. Center for Humanities*, 518 U.S. 415, 427 (1996), so the court applies Nevada law here.

### III.    DISCUSSION

Plaintiffs assert seven causes of action against Lincoln: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) bad faith, (4) unjust enrichment, (5) misrepresentation, (6) declaratory relief, and (7) promissory estoppel.[5]

In its defense, Lincoln argues that plaintiffs knew what they were buying when they purchased the life insurance contract in 2001, that the terms were "amply disclosed," and that the plain language of the contract should control.[6] (ECF No. 15). The court agrees and accordingly GRANTS Lincoln's motion for judgment on the pleadings for the following reasons.

#### A.  Unjust Enrichment and Promissory Estoppel

As a threshold matter, claims for unjust enrichment and promissory estoppel cannot survive when a written contract exists. *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*, 113 Nev. 747, 756, 942 P.2d 182, 187 (1997) ("The doctrine of unjust enrichment or recovery in quasi contract applies to situations *where there is no legal contract*…" (emphasis added)).

Since the presence of a written contract manifestly exists in this case, and since the court does not ultimately find the contract voidable, the claims of unjust enrichment and promissory estoppel are DISMISSED as to Lincoln.

---

[5] Plaintiffs also assert an eighth cause of action of negligence, but only against defendants Kastner and Capitas Financial (*See* SAC).

[6] Lincoln also argues that plaintiffs' causes of action are time-barred. Ambiguity surrounds the point of accrual for the calculation of the statute of limitations for plaintiffs' various claims. Because the court reaches a decision on the merits, it need not address the statute of limitations arguments.

### B. Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing

It is well established that a covenant of good faith and fair dealing is implied in every contract under Nevada law. *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007). The covenant "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Id.*

It is also well established that a claim of breach of implied covenant cannot be based on the same conduct separately pleaded for a breach of contract claim. *Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020). This is because a breach of covenant claim requires "literal compliance" with the contract while alleging a party "deliberately countervene[d] the intention and spirit of the contract." *Hilton Hotels Corp., v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232 (1991). The two claims are mutually exclusive.

Here, the claims for both the breach of contract and breach of implied covenant rest on, and indeed incorporate, all the same allegations. (SAC at 5-7). Thus, the conduct pleaded in the complaint can support only either breach of contract or breach of implied covenant—not both. Since—as far as the court can tell—plaintiffs' claims appear to be centered around Lincoln's breach of the "spirit" of the contract (*See* ECF No. 27), the court addresses the breach of implied covenant claim on the merits and DISMISSES the breach of contract claim against Lincoln.

#### *i.    Breach of the implied covenant of good faith and fair dealing*

Plaintiffs argue that because Lincoln sent them invoices for a "fixed" yearly premium of $23,137 to fund their Policy for two decades—totaling approximately $450,000—Lincoln lured them into believing the Policy was a "term" policy that would not lapse. (*Id.* at 8). According to plaintiffs, Lincoln "hid the ball" through "unintelligible" documents that obscured terms in plain sight and "bilked them for 17 years by selling [plaintiffs] a Policy that was not what they intended to buy." (*Id.* at 11).

Lincoln contends that it simply abided by the written Policy entered into two decades earlier and cannot be held liable for doing so. (ECF No. 15 at 5). The court agrees with Lincoln's position.

James C. Mahan
U.S. District Judge

- 5 -

Further, the more relevant inquiry under a breach of implied covenant claim is whether Lincoln deliberately contravened the intention and spirit of the contract. *Hilton Hotels Corp.*, 808 P.2d at 923. The court finds that it did not.

The court cannot save the kind of unforced error plaintiffs made in initially agreeing to a life insurance policy they purportedly did not want. By all accounts, the plaintiffs entered into and signed an agreement for a *variable* life insurance policy, not a term policy. The very first page of the Policy contains the following disclaimer in bold and all caps: "Any benefits and values provided by the [P]olicy based on the investment experience of the variable account *are variable and are not guaranteed as to dollar amount.*" (*See* Counterclaim, Ex. C at 2) (emphasis added).

Additionally, the Annual Policy Summary referred to by plaintiffs in their response brief lists the "Product Name" of the Policy in the first block of information on the statement page, along with the name of the insured and other basic, high-level policy information. (ECF No. 27, Ex. 2). It plainly states the Policy is a "Flexible Premium *Variable* Life Insurance." (*Id.*) (emphasis added).

What is more, the premium amount is categorized as a "Planned" premium, as opposed to a "fixed" or required premium. (ECF No. 27, Ex. 2). The terms of the Policy required that plaintiffs "choose[] to make periodic premium payments" and Lincoln would send reminder notices "for the amounts and with the frequency elected by" plaintiffs. (Counterclaim, Ex. C at 13). Altogether, the Policy was clearly variable with a customer determined "planned" premium. This belies plaintiffs' arguments that they were hoodwinked into believing the Policy was in fact a fixed term policy.

Plaintiffs also aver that they reasonably believed the Policy would last until John Gallina was 100 because they allege in their complaint that the Policy was based on a Coverage Protection Benefit Rider (the "Rider").[7]  (SAC ¶ 11). Even accepting this

---

[7] The only substantiation given for its existence, and alleged reliance on it, is a "Maturity Date" listed on the Annual Policy Summary as 2037, the year John Gallina will turn 100 years old. (ECF No. 27, Ex. 2).

allegation as true, *Gregg*, 870 F.3d at 887, the countervailing facts on the face of the Policy outweigh any dispositive value the purported Rider may have.

First, the Policy—as submitted to the court—has no such rider attached to it. (Counterclaim, Ex. C). Second, and more illustratively, page three of the Policy (titled "Policy Specifications") includes a bolded note which explicitly states: the "[P]olicy will terminate *before the Insured reaches Age 100* if the actual premiums paid and investment experience are insufficient to continue coverage to such a date." (Counterclaim, Ex. C at 3) (emphasis added).

In the face of all this, plaintiff is left with the tenuous argument that Lincoln's acceptance of a regular, "fixed"-like yearly premium payment of $23,137—and Lincoln's repeated sending of invoices in that exact amount—transmuted the agreement to a term life insurance policy under a "course of dealing" theory. NEV. REV. STAT. § 104.2202.

Nevada law allows the "course of performance, course of dealing, or usage of trade" to "explain or supplement" a written agreement. *Id.* However, petitioning the court to fundamentally alter material aspects of an agreement—such as converting a variable life insurance policy to a term policy—brings too much to bear on this statute and plaintiffs do not cite any case law supporting such a drastic application.

In sum, the court does not find that Lincoln breached its implied covenant of good faith and fair dealing in its contractual agreement to provide a variable life insurance policy for John Gallina.

Accordingly, plaintiffs' claim of breach of implied covenant of good faith and fair dealing is DISMISSED as to Lincoln.

C. **Bad Faith**

Collateral to a contractual covenant is a special, fiduciary-like relationship between an insurer and insured, which can give rise to tort liability for bad faith. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 325–26 (Nev. 2009). To state a claim for bad faith, the insured must plausibly allege that: (1) an insurer denied a claim; (2) without any reasonable basis; and (3)

James C. Mahan
U.S. District Judge

- 7 -

1 with the knowledge or reckless disregard of any reasonable basis to deny coverage. *See*
2 *Falline v. GNLV Corp.*, 107 Nev. 1004, 1009 (1991).

3 Plaintiffs' claim fizzles in the first element since their claim is self-admittedly
4 preemptive. No claim has been denied. Even if the court entertains the notion that a bad
5 faith insurance claim can include an *anticipated* denial, the claim would fail because, based
6 on the current facts, Lincoln's denial would be reasonably based on the insured's failure to
7 meet his contractual obligations of keeping the Policy funded.

8 Accordingly, plaintiffs' bad faith claim is DISMISSED as to Lincoln.

### D. Misrepresentation

10 Plaintiffs additionally allege misrepresentation but do not clarify if it was intentional
11 or negligent. (SAC at 27). Regardless, both types of misrepresentation require the element
12 of "false representation," which is not present here. *See Blanchard v. Blancard*, 108 Nev.
13 908, 911 (1992); *see Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 129 Nev. 394, 400 (2013).

14 Plaintiffs argue that "Lincoln mispresented the cost and terms of the Policy to
15 plaintiffs' detriment" because after 20 years of paying $23,137 per year under what they
16 thought was a guaranteed policy, they are now required to pay significantly more[8] to keep the
17 Policy active. (ECF No. 27 at 10). Lincoln contends that the Policy was clearly presented as
18 a variable policy subject to the vicissitudes of the market. (ECF No. 15). Indeed, the Policy
19 shows that plaintiffs hand-selected seven different funds with "investment" options when
20 they entered into the contract, confuting any notion that plaintiffs were unaware of the
21 investment component of the Policy. (Counterclaim, Ex. C at 34).

22 Consequently, and for the same reasons stated *supra*, Part III.B.i, the court does not
23 find that Lincoln misrepresented the terms of the Policy. The court also rejects plaintiffs'
24 notion that Lincoln issued a "predatory policy." (ECF No. 27 at 3). The court strains to
25 understand how a standard life insurance policy option could be predatory.

---

[8] Plaintiffs contend that the Policy now requires $160,000 a year in annual premiums to save it. (ECF No. 27 at 3). Plaintiffs admit that Lincoln has never invoiced them for $160,000; this amount presumably originated from plaintiffs seeking advice from a third-party insurance agent. (*Id.* ll. 13-16).

James C. Mahan
U.S. District Judge

- 8 -

The court sympathizes with the stark dilemma plaintiffs now face near the end of John Gallina's life, but the plain terms of the contract evince one conclusion—this was a clearly represented variable life insurance policy.

Accordingly, plaintiffs' claim of misrepresentation is DISMISSED as to Lincoln.

### E. Declaratory Relief

Plaintiffs' final cause of action is declaratory relief. (SAC at 10). Declaratory relief is a remedy, not an independent cause of action. 28 U.S.C. § 2201; *see Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Because plaintiffs assert other independent causes of action, the court will liberally interpret the action as a request for a remedy.

Even so, the request is futile after the foregoing discussion. Plaintiffs seek an order from the court "confirming that premium payments for the Policy are $23,137 a year, that [p]laintiffs are not in arrears, and that the Policy should not be terminated." (SAC at 10). Given the unambiguous terms of the Policy, the court is not prepared to rewrite the contract. Accordingly, plaintiffs' request for declaratory relief is DENIED.

In sum, the court holds that there is "no issue of material fact in dispute" and Lincoln is entitled to judgment as a matter of law based on the pleadings. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Plaintiffs may be despondent over their inadvertent error, but it is not the court's responsibility to remedy such a volitional—if highly grievous—error. Plaintiffs' attempt to impute this misapprehension on Lincoln is misguided. Plaintiffs had a duty to read and understand the contract, even if it was prolix. *Farmers Ins. Exchange v. Young*, 108 Nev. 328, n.2 (1992) (concluding that consumers have a responsibility to read insurance policies because otherwise it would force insurers to explain verbally every minute detail of a policy).

### F. Leaders' Joinder to Lincoln's Motion for Judgment on the Pleadings

Defendant Leaders joined Lincoln's motion for judgment on the pleadings and requests the court to also enter judgment against plaintiffs in favor of Leaders (ECF No. 23), but Leaders is an alleged *broker*, not writer, of the Policy. Therefore, the foregoing analysis

is inapposite to its defense and the court disagrees with Leaders' contention that "[plaintiffs] plead themselves out of their claims by referring to the [P]olicy itself." (*Id.* at 1).

The court finds that material issues of fact and law remain for the alleged negligence of hired financial representatives—like Leaders—in advising plaintiffs to enter into the Policy in the first place. Thus, Leaders is not entitled to judgment as a matter of law based on the pleadings.

Accordingly, the court DENIES Leaders' motion for judgment on the pleadings.

## IV.  CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Lincoln's motion for judgment on the pleadings (ECF No. 15) be, and the same hereby is, GRANTED. All claims against Lincoln are DISMISSED, with prejudice.

IT IS FURTHER ORDERED that Leaders' joinder motion for judgment on the pleadings (ECF No. 23), be, and the same hereby is, DENIED.

The clerk shall terminate Lincoln as a defendant in this case.

DATED November 12, 2021.

_____
UNITED STATES DISTRICT JUDGE